## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   **STANLEY "ALVIN" GREGORY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIV-14-** 478-D |
| | ) | |
| 1.   **GENUINE PARTS CO., d/b/a NAPA** | ) | |
| **AUTO PARTS,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Stanley "Alvin" Gregory, and for his Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff, Stanley "Alvin" Gregory, is an adult male resident of Seminole County, Oklahoma.

2.      Defendant Genuine Parts Co., d/b/a NAPA Auto Parts, is an entity doing business in Oklahoma County, Oklahoma and throughout Oklahoma.

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), (b) disability discrimination and retaliation in violation of the ADA and ADAAA, (c) interference with and retaliation for Plaintiff's use of leave covered by the Family Medical Leave Act ("FMLA"), (d) worker's compensation retaliation,

1

and (e) wrongful termination in the form of a *Burk* tort in violation of Oklahoma state law.

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5.      Defendant is doing business in Oklahoma County and throughout Oklahoma. Defendant may be served in Oklahoma County. Oklahoma County is located in the Western District of Oklahoma. And, many of the actions complained of herein occurred in Oklahoma County, including Plaintiff's termination. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      Plaintiff has exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 27, 2013. Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated February 26, 2014 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7.      Plaintiff, Stanley "Alvin" Gregory, was born in 1950, making him over the age of forty (40) at all times relevant to this action.

8.      Defendant Genuine Parts Co. is a publicly traded company. Its automotive parts group is its largest division, distributing over 380,000 products through its 58 NAPA

distribution centers located across the United States.

9.      Plaintiff was originally employed with Defendant from 1992 until 2003, when a mass layoff of the sales force was conducted.  He was re-hired in January 2004 into the position of Under Car District Sales Manager - NAPA OKC.

10.      During his employment, Plaintiff worked out of his home office in Maud, Oklahoma, and would travel several days each week to meet with customers in Oklahoma, Texas, Kansas and Arkansas.  Additionally, Plaintiff worked out of Defendant's Oklahoma City, Oklahoma distribution center.

11.      Throughout his lengthy employment, Plaintiff's job performance was at least satisfactory as Plaintiff has a great deal of experience in the auto parts industry.

12.      On or about May 21, 2012, Plaintiff suffered an injury from an on-the-job car accident in his company car.  The collision occurred after another car performed an illegal U-turn and resulted in an injury to Plaintiff's left shoulder.  Plaintiff spoke with Defendant's Human Resources office to inquire about how to file a Worker's Compensation claim and what steps he needed to take to ensure his medical treatment would be covered.  Plaintiff later filed a Worker's Compensation claim regarding this injury on or about July 28, 2013.

13.      In or around August 2012, Lon Bleess became the Regional Sales Manager and Plaintiff's direct supervisor.  Prior to that time, Plaintiff had reported to Tracy Campbell, Campbell's predecessor, Ziatko Stojadinovic, and Dan Leasinger, who had rehired Plaintiff in 2004.  Plaintiff had received satisfactory feedback regarding his performance from his

prior managers.

14.    From August 2012 forward, Bleess discriminated against Plaintiff and treated him in a less favorable manner than his younger non-disabled co-workers.

15.    In or around December 2012, Plaintiff suffered congestive heart failure and underwent surgery to implant a pacemaker.  Plaintiff was off work for approximately three (3) days for such procedure before returning to work with a light duty restriction that included no lifting over ten (10) pounds, no standing for extended periods and no driving for prolonged periods.  Plaintiff emailed a copy of his doctor's note detailing his restrictions to Bleess.

16.    At no time was Plaintiff offered FMLA leave for his absences related to his serious health condition.

17.    In or around March 2013, Plaintiff went to Dallas, Texas for a meeting called a "Blitz" with Bleess and the District Sales Managers (the majority of whom are significantly younger than Plaintiff).  During the Blitz, the delivery of promotion boxes to dealers was discussed.  Plaintiff had ordered the promotion box for several of his dealers in Tulsa, Oklahoma, but they had not been delivered due to problems with the shipping company. Plaintiff suggested he work the rest of the work week (that Thursday and Friday) in Dallas before returning home over the weekend and delivering the promotion boxes on Monday. This would have allowed him to break up his driving time, pursuant to his medical restrictions.

4

18.     However, Bleess told Plaintiff to work all day Thursday in Dallas, then drive to Tulsa on Thursday evening to deliver the promotion boxes on Friday morning.  Plaintiff suggested that instead, he drive to his home on Thursday evening, then drive to Tulsa on Friday morning to make the deliveries, but Bleess refused to allow Plaintiff to do so.

19.     Plaintiff did as he was directed and drove the approximate five (5) hours from Dallas to Tulsa on Thursday evening before going straight to bed upon his arrival in Tulsa due to the physical stress of driving.  The following morning, Plaintiff delivered and set up the promotional displays for the five (5) different locations that had not received the material before driving the additional two (2) hours to return home.

20.     After Plaintiff delivered the last promotion box around noon, he called Bleess to let him know all of the boxes had been delivered and the displays had been arranged. However, Bleess was upset and frustrated that Plaintiff had not responded to an email that Bleess had sent to Plaintiff Thursday.  However, Bleess had sent the email after Plaintiff had left for Tulsa, and Plaintiff did not have email on his personal phone that was used for work.

21.     In or around the Spring of 2013, another promotion was conducted where District Sales Managers were to set up displays of NAPA brakes at dealer locations, photograph the displays and send the photographs into Defendant's headquarters.  Plaintiff had a quota of completing this promotional display for twenty-two (22) stores.  However, Plaintiff actually completed twenty-four (24) stores, submitting each photograph as required.

22.     Despite this, Bleess told Plaintiff he did not meet his quota, as Bleess accused Plaintiff of only completing twelve (12) stores (not the 24 he had actually done).  Plaintiff informed Bleess that this was incorrect and offered to show him the photographs Plaintiff had submitted to headquarters.  However, Bleess refused to review it.  Therefore, Plaintiff contacted the corporate office and was told they would look into the discrepancy.

23.     Also in or around the Spring of 2013, Plaintiff spoke with Bleess about adding more dealers to his district.  At that time, Defendant had divided Oklahoma into two districts: (1) east, covered by Plaintiff, and (2) west, covered by David Arnett (who is significantly younger than Plaintiff).  The western district did about $5 million in sales and had a higher growth potential, while the eastern district did about $3 million in sales and consisted of mostly small businesses.  Bleess originally agreed to give Plaintiff more dealers, but later refused to do so.

24.     Throughout the time Bleess was Plaintiff's supervisor, he directed Plaintiff to order parts for dealers with Plaintiff's company funds so that the dealers would get the parts for free.  Such conduct was fraud (and against company policy), and Plaintiff refused to engage in such behavior.

25.     On or about April 8, 2013, Plaintiff had a follow-up appointment with his doctor, who provided Plaintiff with a new note requesting Plaintiff remain on light duty.

26.     On or about the week on July 8, 2013, Plaintiff attended a meeting in Dallas, Texas, where Bleess and the NAPA brakes representative were present.  Plaintiff asked the

NAPA representative, Ron Hoxsey, from NAPA Breaks, Inc., if any progress had been made in looking into the missing photographs for the brake promotion.  The representative told Plaintiff he was still working on it.

27.     The following week, on or about July 15, 2013, Plaintiff had been approved for vacation leave. However, Bleess requested that Plaintiff and Arnett meet him at the Oklahoma City distribution center.  When Plaintiff arrived, Bleess pulled him into a HR office and terminated Plaintiff for alleged low performance.  However, the reason stated was merely pretext.  Plaintiff had met his sales goals, received annual bonuses, and had not received any written discipline for low performance.

28.     Significantly, Arnett was not terminated, despite failing to meet his sales goals from 2004 to 2011.  And, at the time of Plaintiff's termination, Arnett was on a performance improvement plan.

29.     Bleess told Plaintiff to turn in his car and computer immediately.  Plaintiff returned his computer, but stated that he would return the car once he removed his personal belongings.  Bleess then called Plaintiff approximately six (6) times during Plaintiff's drive home, but refused to discuss Plaintiff's termination.

30.     In addition to his shoulder injury and his heart condition, Plaintiff was diagnosed with diabetes in or around 2004.  As such, Plaintiff is a qualified individual with disabilities in that he is disabled, has a record of disabilities and/or was perceived as disabled. His disabilities substantially limit and/or limited him in one or more major life activities,

including but not limited to eating, sleeping, breathing, walking, standing, lifting, and pushing.  His disabilities impact one or more of his internal bodily processes, including but not limited to his circulatory, nervous, cardiovascular, and respiratory systems.  However, at all times relevant hereto, he was able to perform the essential functions of his job with or without reasonable accommodations.

31.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADEA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

32.    The matters alleged above constitute violations of the ADEA in the form of age discrimination.

33.    Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, he was over the age of forty (40), was qualified for his job, was terminated, and his position was not eliminated at the time of his termination.

34.    As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

## COUNT II - ADA AND ADAAA

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35.     The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

36.     More specifically, Plaintiff was a qualified individual with a disability in that he suffers from a physical impairment (i.e., diabetes, heart condition and shoulder injury) which substantially limits his ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disabilities impact one or more of his internal bodily processes as shown herein.

37.     Despite said impairments, Plaintiff could perform the essential functions of his job with or without reasonable accommodations at all relevant times hereto.

38.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

39.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III: FMLA

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

40.     The matters alleged above constitute a violation of the Family Medical Leave Act for retaliation for Plaintiff's use and/or attempted use of medical leave and interference with his ability to use FMLA.

41.     Plaintiff was entitled to medical leave because he required time off to care for himself due to a serious health condition (as set forth above) and worked for Defendant (i.e., entities with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to him need for leave.

42.     Defendant retaliated against Plaintiff for his use of time off.

43.     As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

44.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendant's violation of the FMLA), attorney fees and costs.

## COUNT IV:  WORKERS' COMPENSATION RETALIATION

For his fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

45.     Defendant's actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act, 85 O.S. §341.

46.     Plaintiff sustained a job-related injury for which he could assert a claim for benefits under the Oklahoma Workers' Compensation Act.

47.     Defendant had knowledge of Plaintiff's work-related injury.   Defendant terminated Plaintiff's employment shortly after he put them on notice of his injury.

48.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

49.     Defendant's actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## COUNT V - *BURK* TORT: Whistleblowing

For his fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

50.     The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal

11

right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

51.   As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 9th DAY OF MAY, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA #31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED